IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH GRAY,<br><br>    Plaintiff,<br><br>  v.<br><br>C. SMITH; L. PENNISI; R.<br>GROUNDS; MIKE KU; NASH;<br>JOHN DOE,<br><br>    Defendants<br>_____/ | No. C 13-1299 WHA (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND FOR SUMMARY JUDGMENT; DENYING MOTIONS TO COMPEL AND TO STAY; GRANTING MOTIONS TO SUBSTITUTE DEFENDANTS AND FOR EXTENSION OF TIME; DENYING MOTION FOR APPOINTMENT OF COUNSEL; DIRECTING MARSHAL TO SERVE DEFENDANT C. SMITH; GRANTING LEAVE TO FILE AMENDED COMPLAINT; DIRECTING DEFENDANTS TO PROVIDE DISCOVERY TO PLAINTIFF; INSTRUCTIONS TO CLERK**<br><br>(Docket Nos. 12, 17, 26, 31, 34, 35, 40, 46, 50) |

**INTRODUCTION**

Plaintiff, a pro se prisoner, filed this civil rights case under 42 U.S.C. 1983 against officials at Salinas Valley State Prison ("SVSP") claiming that they violated his Eighth Amendment rights and state law. The complaint was reviewed and ordered served upon the SVSP officials named in the complaint: T. Smith, L. Pennisi, R. Grounds and Mike Ku.

Pennisi, Grounds and Ku (hereinafter "defendants" unless otherwise specified) filed a motion to dismiss or in the alternative for summary judgment, plaintiff opposed the motion, defendants filed a reply brief, and plaintiff filed a rebuttal to the reply brief. After consideration of all these papers and their supporting exhibits, the motion to dismiss and for summary judgment is **GRANTED IN PART AND DENIED IN PART.**

No official by the name of T. Smith could be served at SVSP, and plaintiff has filed a motion to correct the first initial because his correct name is C. Smith. Plaintiff also filed a motion to name one of the Jane Doe defendants as "Nash." These motions are **GRANTED** and the caption of this order reflects the corrected names of these defendants. All other pending motions are addressed below.

## STATEMENT

In his verified complaint, plaintiff states that a riot occurred in his exercise yard, SVSP's "B Yard," on June 19, 2012 (Compl. 4). SVSP officials ordered all inmates to the ground and then placed them in plastic wrist restraint ("flex cuffs") (*ibid.*). When plaintiff got into a prone position, then defendant "John Doe," a correctional officer, ordered him to crawl backwards towards him (*ibid.*). As plaintiff did so, John Doe called him a "motherfucker," dragged him several feet, and placed flex cuffs on him so tightly that they cut into his skin and drew blood (*ibid.*). Shortly after that, plaintiff told defendant Sergeant Pennisi, who was nearby, that the cuffs were too tight and hurt, but Pennisi said he did not have cutters and would return (*ibid.*). Forty-five minutes later, plaintiff saw Pennisi again and continued to complain about the cuffs; Pennisi checked them, agreed they were too tight, but again he told plaintiff that he did not have cutters and left (*id.* 5). About one hour later, plaintiff complained of chest pains and defendant Sergeant Smith rushed over to him with two unnamed nurses and a doctor; the doctor examined plaintiff and opined that the only problem was that the cuffs were too tight (*ibid.*). Smith stated he did not have cutters and walked away (*ibid.*).

After several hours, he and other inmates were taken to a gym where defendant Nash, a correctional officer, replaced the cuffs with looser ones (*id.* 5-6). Plaintiff had the tight cuffs on

1   his wrists for a total of 5.5 hours (*id.* 6). He was then examined by defendant Nurse Ku, and he
2   told her that he had cuts on his wrist, but Ku did not write that down because Nash told him not
3   to (*ibid.*). Approximately one hour later he returned to his cell, the cuffs were removed, and
4   plaintiff had dried blood, bruises, and swelling on his wrist (*ibid.*). Before he went to sleep, he
5   experienced "intense pain" and submitted a request for medical care (*ibid.*). The next day he
6   was seen in the clinic by defendant Ku, whom he informed of the continuing pain, and Ku told
7   plaintiff to wait for a month to see if the pain disappeared (*id.* 6-7). He experienced the "intense
8   pain" for two days, and then "lesser, tingling pain" for "several months" (*ibid.*).

9   On August 19, 2012, he requested another medical appointment and was seen the next
10  day by Dr. Birdsong, who opined that he had a pinched nerve that would take several months to
11  a year to heal and for the pain to subside (*ibid.*). Plaintiff alleges that Dr. Birdsong told him that
12  he sees this kind of injury from cuffs "all the time" (*ibid.*). He experienced numbness and
13  occasional sharp pain sensations over the next three months (*ibid.*).

14  Defendants present evidence in support of their motion to dismiss and for summary
15  judgment that the riot began at approximately 11:10 a.m. on June 19, 2012, and involved 61
16  inmates on the "B Yard" (Decl. Garske Exh. B; Decl. Pennisi ¶ 8). The rioting inmates fought
17  each other with fists and inmate-manufactured weapons, nine of which were recovered by
18  prison staff after the rioting ceased (Garske Decl. Exh. B). Defendants do not dispute that
19  plaintiff was one of 40-50 other inmates on the yard who did not get involved in the fighting
20  (Pennisi Decl. ¶ 6; Defs.' Mot. Dism. & Summ. J. 6). Verbal orders, as well as grenades and a
21  40 mm round of Oleoresin Capsicum ("OC") spray did not initially stop the fighting, but
22  eventually the fighting inmates did get down do the ground (Garske Decl. Exh. B). Prison staff
23  put flex-cuff restraints on all inmates, including those who fought and those who did not (*ibid.*).
24  Medical staff then immediately assessed injured inmates, documented their injuries on medical
25  forms, and evaluated and treated the injuries both on the scene and in the "patio area" (*ibid.*).
26  Several inmates with the most severe injuries were transferred by ambulance to hospitals
27  outside the facility, others were sent to the prison medical clinic for additional treatment, and
28

3

others were sent back to their cells (*ibid.*; Ku Decl. ¶ 3).

Pennisi was a Sergeant assigned to a different yard at the time of the riot, but when the alarm sounded, he brought his team of officers to B Yard (Pennisi Decl. ¶¶ 2-3). He saw multiple inmates fighting despite verbal orders and OC spray, and he then helped an inmate lying on the ground, gasping for air, and with blood coming from his neck area (Pennisi Decl. ¶¶ 3-5; Garske Decl. Exh. C). Pennisi called for an ambulance and summoned medical staff to care for the inmate (Pennisi Decl. ¶ 5). Pennisi then directed his "team" of officers to provide security coverage for other prison staff members as they put flex-cuffs on inmates and then escorted them from the yard(*id.* ¶¶ 6-7). Pennisi does not recall speaking to plaintiff or hearing him complain about the flex cuffs that day (*id.* ¶ 9). He states that if plaintiff had done so, then he would have checked the cuffs and if they were too tight he would have replaced them or asked someone else to do so (*ibid.*).

Defendant Ku, a nurse at SVSP, states that he provided medical care to inmates following the riot, and that his attention was focused on the more severely injured inmates (Decl. Ku ¶ 3). He did examine plaintiff also, however (*id.* ¶ 4). Ku did not find any injuries nor did plaintiff report any to him (*ibid.*) Ku prepared a medical report to that effect (*ibid.*, Exh. A). He states that no officer told him what to write down in the medical report (*id.* ¶ 4). He examined plaintiff two days later, on June 21, because plaintiff complained that he had bruising, swelling and pain in his wrists (*id.* ¶ 6). Ku saw a "faint trace of tightness over his wrist" but no "wounds" (*ibid.*, Exh. C). He advised plaintiff to soak and move his hands for 15-20 minutes each day, and to return in a month if the pain persisted (*id.* Exh. C).

Plaintiff's medical records show that approximately two months after the riot, on August 19, 2012, he requested medical care for his wrists, saying that the pain was a 4 out of 10 (Garske Exh. G). A nurse saw him the next day, found that he had full range of motion in his wrists, and referred him to a doctor (*id.* Exh. H). The doctor told plaintiff that it would take months to a year for the tingling to go away, and he recommended gently massaging the area (*ibid.*). Dr. Birdsong doctor examined plaintiff again on September 24, 2012, found that he

4

suffered neuropraxia (peripheral nerve damage) in the wrist (*id.* Exh. I; Decl. Birdsong ¶ 3). Dr. Birdsong states that plaintiff reported no pain and that his condition was "minor" and typically resolves itself without treatment over time (*ibid.*). Consequently, he recommended that the wrist be observed and plaintiff be seen again in one year (*ibid.*). Plaintiff requested health care again on January 2, 2013, for wrist pain, and on January 4, 2013, he signed a form refusing ed to be seen by the nurse because "I am ok – no more pain on wrist" (Decl. Garske Exhs. J, K; Decl. Birdsong ¶ 4).

**ANALYSIS**

A.  MOTION TO DISMISS

Defendants move to dismiss certain claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that they do not state grounds upon which relief may be granted.

1.  STANDARD OF REVIEW

Failure to state a claim upon which relief may be granted is a grounds for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal for failure to state a claim is a ruling on a question of law. *Parks School of Business, Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotations omitted). Although in order to state a claim a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)

5

(citations omitted). A complaint must proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 1986-87. A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570; *see, e.g., Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952 (2009).

Review is limited to the contents of the complaint, *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested. *Lee v. County of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). In addition, the court may take judicial notice of facts that are not subject to reasonable dispute. *Id.* at 688 (discussing Fed. R. Evid. 201(b)). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Ibid.*

A *pro se* pleading must be liberally construed, and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Twombly*, 550 U.S. at 570 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Symington*, 51 F.3d at 1484.

2. DISCUSSION

Defendants argue that plaintiff's excessive force and battery claims against the defendants named in the complaint — Pennisi, Smith, Grounds and Ku — should be dismissed because there was no alleged use of force by them. Plaintiff agrees that these defendants did not apply force against him and states that he is not making such claims against these defendants. Because these claims are not made against these defendants, they need not be dismissed. The only excessive force and battery claims are against "John Doe," the correctional officer who allegedly applied the flex cuffs too tightly and dragged plaintiff. Plaintiff's efforts to learn John Doe's name through discovery are addressed below.

Defendants also argue that plaintiff's medical negligence claim against Ku should be dismissed for failure to comply with the California Tort Claim Act, which requires presentation of the claim to the California Victim Compensation and Government Claims Board ("Board"). *See* Cal. Gov. Code § 905.2.  To comply with the Act, a plaintiff must present the factual circumstances of the claim to the Board, and that those facts must be the same as the facts alleged in the complaint. *See Watson v. State of California*, 21 Cal.App. 4th 836, 844 (1993). Plaintiff's claim to the Board only refers to the allegedly negligent medical care by saying that he "did not receive medical attention" (Compl. Exh. B).  He did not present any of the facts surrounding Ku's evaluation and treatment that he alleged in the complaint (*ibid.*). Consequently, the claim must be dismissed under the Act.

Defendants also argue that plaintiff has not stated a cognizable claim against defendant Grounds, the SVSP Warden.  They are correct that he is not vicariously liable for the actions of his subordinates because supervisors cannot be held liable under Section 1983 based on a theory of "respondeat superior," i.e. on the theory that they are responsible for the actions of their subordinates. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  They are also correct that plaintiff has not alleged that Grounds personally participated his treatment on the day of the riot or his subsequent medical care, and therefore cannot be held liable on that basis.

In the complaint, plaintiff does not claim that Grounds violated Section 1983, only that he was negligent (Compl. 7-8).  This negligence claim must be dismissed for the same reasons as the negligence claim against Ku because plaintiff did not state the factual basis for his claim against Grounds as required by the California Tort Claims Act (Compl. Exh. B).  The factual basis for plaintiff's claim is that Grounds's policies regarding flex cuffs led to plaintiff enduring five hours in cuffs that were too tight.  This allegation does not appear in his tort claim to the state board.  Accordingly, his claim against Grounds must be dismissed.  He will be granted leave to amend this claim, however, to state a claim against Grounds under Section 1983.  In his opposition, plaintiff argues that he is suing Grounds because Grounds knew or should have known about the "common problem" at SVSP of prison officials applying flex cuffs too tightly

1 and leaving them on too long, causing wrist injuries, and yet Grounds did not stop this problem
2 by implementing better policies regarding the use of the flex cuffs, such as banning them,
3 requiring all staff to carry cuff cutters, or limiting how long inmates could remain in cuffs.
4 These policies could be the basis for a supervisor claim against Grounds under Section 1983,
5 *see generally Redman v. County of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir. 1991)
6 (supervisory officials may be liable under Section 1983 if they implement a policy so deficient
7 that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the
8 constitutional violation"), provided that plaintiff also alleges that Grounds knowingly
9 acquiesced in the subordinates' deliberate indifference to cuffs that were too tight, and/or that
10 Grounds acted with the purpose of his subordinates' applying the cuffs too tightly, *see Oregon
11 State University Student Alliance v. Ray*, .699 F.3d 1053, 1071 (9th Cir. 2012) (holding that
12 under 1983 a plaintiff must also show that supervisor had requisite state of mind to establish
13 liability, which turns on state of mind required by particular claim, and discussing different
14 states of mind required for different claims). Defendants' arguments in their reply brief that
15 plaintiff has not supplied sufficient evidence to support his claims against Grounds hardly merit
16 discussion because a plaintiff need not submit evidence to avoid dismissal under Rule 12(b)(6).

17 The negligence claims against Ku and Grounds will be dismissed. Plaintiff is granted
18 leave to amend the complaint to state a claim against Grounds under Section 1983 based on
19 Grounds's allegedly inadequate policies regarding the use of flex cuffs, provided he can allege
20 the foregoing elements of such a claim in good faith.

21 B. SUMMARY JUDGMENT

22 1. STANDARD OF REVIEW

23 Summary judgment is proper where the pleadings, discovery and affidavits show that
24 there is "no genuine issue as to any material fact and that the moving party is entitled to
25 judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect
26 the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986). A dispute
27 as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a
28

8

1  verdict for the nonmoving party. *Ibid*.

2      The moving party for summary judgment bears the initial burden of identifying those
3  portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine
4  issue of material fact. *Celotex Corp.v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving
5  party has met this burden of production, the nonmoving party must go beyond the pleadings
6  and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine
7  issue for trial. *Ibid*. If the nonmoving party fails to produce enough evidence to show a
8  genuine issue of material fact, the moving party wins. *Ibid*.

9      2.    DISCUSSION

10      Plaintiff claims that defendants Pennisi, Smith, Ku, Nash and John Doe violated his
11  Eighth Amendment rights. Defendants Pennisi and Ku move for summary judgment on the
12  grounds that there is no material issue of fact and that they are entitled to qualified immunity.
13  Smith and Nash were not served because plaintiff did not include their correct names in the
14  complaint, although plaintiff has since supplied their correct names. Nevertheless, the claims
15  against all of these defendants, except for Doe, are addressed below.

16      The treatment a prisoner receives in prison and the conditions under which he is
17  confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S.
18  25, 31 (1993). A prison official violates the Eighth Amendment when two requirements are
19  met: (1) the deprivation alleged must be, objectively, sufficiently serious, and (2) the prison
20  official possesses a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834
21  (1994). In most prison-conditions claims, the necessary state of mind is one of "deliberate
22  indifference." *See, e.g., ibid.* (inmate safety); *Helling*, 509 U.S. at 32-33 (inmate health);
23  *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (general conditions of confinement). A higher
24  showing that the official was "malicious and sadistic" applies where there were exigent
25  circumstances and the official was acting to maintain control over difficult prisoners. *See*
26  *LeMaire v. Maass*, 12 F.3d 1444, 1452-54 (9th Cir. 1993). Where, as here, there was a riot that
27  officials were trying to control, the exigent circumstances persisted only until officials were
28

1    able to remove prisoners from riot area and secure them in the yard. *Johnson v. Lewis,* 217 F.3d
2    726, 734 (9th Cir. 2000). Accordingly, a "malicious and sadistic" standard applies to
3    defendants' actions and state of mind until the prisoners were secured in the yard, and a
4    "deliberate indifference" standard applies after that point. *Ibid.*

5          A court considering a claim of qualified immunity must determine whether the plaintiff
6    has alleged the deprivation of an actual constitutional right and whether such right was clearly
7    established such that it would be clear to a reasonable officer that his conduct was unlawful in
8    the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

9          a.    Defendants Pennisi and Smith

10         Viewing the evidence presented in a light most favorable to plaintiff, he has created a
11   genuine factual dispute as to whether defendants Pennisi and Smith were deliberately
12   indifferent to a serious condition when they failed to remove or replace plaintiff's handcuffs.
13   Plaintiff has presented evidence that he told Pennisi and Smith that his flex cuffs were too tight
14   and causing him severe pain, that Pennisi checked the cuffs and agreed that they were too tight,
15   that a doctor and nurse opined that the cuffs were too tight in Smith's presence, and that Smith
16   and Pennisi nevertheless failed to remove the cuffs or get someone who could. Pennisi
17   concedes that if he had learned that the cuffs were too tight, he could have either cut them or
18   found someone who would do so. Plaintiff also states that as a result of these actions, he
19   remained in the cuffs in severe pain for 5.5 hours. A reasonable fact-finder could conclude that
20   these circumstances constitute a serious deprivation in the form of severe pain for over five
21   hours, to which Pennisi and Smith were deliberately indifferent because they knew about it,
22   could have corrected it, and failed to do so.

23         Defendants argue, and it is undisputed, that because of the riot, Pennisi (and presumably
24   Smith) had to secure all the inmates and assist medical staff with attending to the inmates with
25   more severe injuries than plaintiff. However, plaintiff has presented evidence that at the time he
26   asked Pennisi and Smith for help, the exigent circumstances had ceased because the inmates
27   were already in handcuffs, and prison staff had removed the severely injured inmates from the
28

yard (Decl. R. Gibson ¶ 3; Decl. Williams ¶ 4; Decl. Turner ¶¶ 2, 4). Similarly, Officer J. Gibson, who videotaped the yard, indicates that the yard was "secure" as of 12:06 p.m., which is approximately when plaintiff states that he asked Pennisi for help and an hour before he asked Smith for help (Decl. J. Gibson ¶¶ 3-4; Compl. 4-5). One inmate states that he saw that Pennisi was not doing anything when plaintiff asked him for help (Turner Decl. ¶ 4). While defendants are correct that inmates do not have the authority or expertise to determine when the yard is "secure," they can attest to what they saw, namely that all inmates were in cuffs and prone positions, all seriously injured inmates were removed, and Pennisi did not appear to be busy anymore. Defendants have not presented evidence that Pennisi and Smith could not have helped plaintiff at the time plaintiff assertedly asked for it; indeed, Pennisi simply states that he does not remember interacting with plaintiff at all (Decl. Pennisi ¶ 9). If the exigent circumstances had indeed ceases when Pennisi and Smith interacted with plaintiff, then a deliberate indifference standard would apply to plaintiff's claims against them. As discussed above, there is evidence upon which a reasonable fact-finder could find that they were deliberately indifferent to a serious deprivation.

Plaintiff's evidence could reasonably be believed or rejected by a fact-finder, and, if believed, could reasonably support the conclusion that after the exigent circumstances of the riot ceased, Pennisi and Smith were deliberately indifferent to plaintiff's serious need to alleviate severe pain from the cuffs. As a result, there is a genuine factual issue as to whether Pennisi and Smith violated plaintiff's Eighth Amendment rights. This factual issue also precludes granting Pennisi and Smith qualified immunity because it would be clear to any reasonable correctional officer that if he can replace cuffs that are so tight that they are causing a prone inmate severe pain but he does not do so, he violates the inmate's Eighth Amendment rights.

    b. <u>Defendants Ku and Nash</u>

Defendants argue that the evidence establishes that defendant Nurse Ku did not violate his Eighth Amendment rights by failing to provide adequate medical treatment. Deliberate

11

indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Ibid.* A prison official is deliberately indifferent if she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Neither negligence nor gross negligence will constitute deliberate indifference. *Id.* at 835-36 & n.4.

The evidence shows that Ku did not disregard a "serious medical need" within the meaning of the Eighth Amendment. It is undisputed that by the time Ku first saw plaintiff, his tight cuffs had been replaced. Ku denies seeing any injuries from the cuffs, but even assuming plaintiff's account he had cuts, swelling and bruising on his wrists is true, there is no evidence that the failure to provide treatment of such injuries could result in further significant injury or unnecessary infliction of pain so as to render them a "serious medical need" under the Eighth Amendment. To the contrary, the only medical evidence indicates that plaintiff's temporary nerve damage was "minor" and would resolve itself without treatment over several months (Decl. Birdsong ¶ 3-4). The evidence shows that this is indeed what happened, as the pain subsided and was gone after several months. There is no evidence that Ku's failure to provide treatment beyond the examinations and recommendations for soaking, massage and movement (Decl. Ku ¶ 6) would lead to further significant injury or unnecessary and wanton pain. Although plaintiff was diagnosed with minor and temporary nerve damage, there is no evidence that this was caused by Ku's treatment or lack thereof, as opposed to by the tight flex cuffs for which Ku was not responsible. Consequently, there is no genuine factual issue as to whether this was a "serious medical condition" so as to satisfy the first prong of his Eighth Amendment claim against Ku. On these grounds alone, Ku is entitled to summary judgment.

There also does not appear to be any evidence that Ku deliberately ignored plaintiff's medical needs. It is undisputed that on the day of the riot Ku was busy addressing dozens of

12

1    injured inmates with more serious medical conditions. There is also no evidence that his
2    conclusions on the day of the riot and the next time he saw plaintiff two days later were not
3    medically sound. To the contrary, the nurses and doctors that subsequently examined him also
4    did not recommend treating the wrist. As a result, there is no evidence upon which a reasonable
5    fact-finder could find that Ku was deliberately indifferent to plaintiff's medical needs so as to
6    satisfy the second prong of plaintiff's Eighth Amendment claim.

Defendants' photographs and video of plaintiff smiling on the day of the riot does not figure into the analysis of this claim because plaintiff could have briefly smiled that day despite being in severe pain. In addition, the conclusion that plaintiff did not suffer a serious medical condition within the meaning of the Eighth Amendment at the time he saw Ku does not mean either that he suffered no injury at all or that he was not in great before Ku examined him, as Defendants argue.

Plaintiff's claim against Nash is that Nash allegedly told Ku not to record plaintiff's complaints about hid injuries on the day of the riot. There is no independent constitutional right for an inmate to have medical injuries written down. Failing to record a medical condition in a medical report could conceivably violate the Eighth Amendment if it led to the inmate no receiving adequate medical for a serious medical need. As discussed above, there is no evidence that plaintiff had a serious medical need under the Eighth Amendment or that he did not receive appropriate medical treatment for that need. As a result, even if Nash caused did cause plaintiff's injuries not to be recorded, she did not violate plaintiff's Eighth Amendment rights. Summary judgment will also be granted on the claims against Nash. *See Columbia Steel Fabricators v. Ahlstrom Recovery*, 44 F.3d 800, 802-03 (9th Cir.) (affirming grant of summary judgment in favor of non-appearing defendant where plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against non-appearing defendant).

        c.    <u>Injunctive Relief</u>

Defendants argue that plaintiff's request for injunctive relief banning the use of flex

13

1  cuffs altogether should be denied. Such a ban is denied because there is no evidence that flex
2  cuffs could never be used without causing unnecessary pain or injury, such as if they are not
3  applied too tightly. As a result, a complete ban on them would not be the least intrusive means
4  necessary to correct a constitutional violation. *See* 18 U.S.C. 3626(a)(1) (limiting availability
5  of prospective injunctive relief). This conclusion does not necessarily preclude other forms of
6  injunctive relief than a complete ban on flex cuffs.

C.   DISCOVERY

1.   Plaintiff's Motion to Stay

Plaintiff filed a motion to stay defendants' motion for summary judgment or to dismiss until he receives certain discovery. He wants all of the video taken by prison staff of the prison riot so that he can learn the name of "John Doe," the defendant who initially applied the flex cuffs to him. Plaintiff undoubtedly needs to learn the name of John Doe to proceed with his claims against him, but defendants' motion does not seek dismissal or summary judgment on the claims against John Doe. Plaintiff does not need to know John Doe's identity in order to defend against the other defendants' motion for summary judgment on his claims against them.

Plaintiff also wants complaints by other prisoners showing ongoing problems with flex cuffs to show that the policies regarding such cuffs were not sufficient. This request pertains to plaintiff's claim that Grounds was negligent in failing to implement better policies. For the reasons described above, this claim was dismissed for failing to comply with the California Government Tort Claims Act, and evidence of other prisoner complaints would not affect that conclusion.

Plaintiff also seeks video of an interview between him and Lieutenant Krenke on July 16, 2012, for his administrative grievance because the video shows that his wrist injuries were as he described them. He wants this video to bolster his medical claim that Ku did not adequately treat those injuries. The conclusion, above, that the injuries were not sufficiently serious to trigger the Eighth Amendment assumes that plaintiff' own description of the injuries is true. Therefore, even if the video does bolster his account of his injuries it would not add to

or alter the analysis of his medical claim.

Accordingly, plaintiff's motion for a stay (dkt. 31) is **DENIED**.

2. Plaintiff's motions to compel

Plaintiff has also filed two motions to compel discovery (dkt. 46, 50). In the first, he seeks all video of the riot so he can learn the name of defendant "John Doe" who is assertedly captured on the video  In the second, he seeks the video of the interview with Lieutenant Krenke as well as prison policies regarding flex cuffs. Both motions are **DENIED** for failure to comply with the meet-and-confer requirements of Rule 37(a). Nevertheless, as it is clear that plaintiff needs to know John Doe's identity in order to serve him, defendants **shall** provide plaintiff with either John Doe's full name or with all of the video of the riot and its aftermath taken by Officer Gibson and any other prison staff.

3. Defendants' motion to stay

Defendants' motion to stay discovery pending the resolution of their motion for summary judgment is **DENIED** as moot because the summary judgment motion is ruled upon..

**CONCLUSION**

Plaintiff's motions to substitute the names of the unserved defendants (dkt. 12, 26) are **GRANTED**. Defendant "Jane Doe" is replaced by the named defendant Correctional Officer Nash, and defendant T. Smith is replaced by defendant "C. Smith." The above caption reflects these changes.

The clerk shall issue summons and the United States Marshal shall serve, without prepayment of fees, a copy of the complaint with all attachments thereto, and a copy of this order, upon defendant **C. Smith (I.D. number 2865603)** at **Salinas Valley State Prison**. Defendant C. Smith and any other defendant who has not already done so shall file an answer in accordance with the Federal Rules of Civil Procedure.

Defendants' motion to dismiss or for summary judgment (dkt. 17) is **GRANTED IN PART AND DENIED IN PART**. The claims of negligence against defendants Grounds and Ku, are **DISMISSED**. Summary judgment is **GRANTED** to defendants Ku and Nash on all other claims.

15

Defendants' motion to stay discovery (dkt. 31) pending a ruling on defendants' motion for summary judgment is **DENIED** as moot in light of the ruling on defendants' motion. Plaintiff's motion to stay (dkt. 34) a ruling on the motion for summary judgment is also **DENIED**. Plaintiff's motion for an extension of time to respond to the motion to dismiss or for summary judgment (dkt. 35) is **GRANTED**.

Plaintiff's motion to "appoint" counsel (dkt. 40) is **DENIED** without prejudice to the Court's sua sponte referring this case to the Federal Pro Bono Project for location of pro bono counsel at a later date should circumstances warrant.

Plaintiff's motions to compel (dkt. 46, 50) are **DENIED**. Nevertheless, defendants shall provide plaintiff with the discovery described above, **on or before March 20, 2014**. Plaintiff shall submit the name and location of defendant "John Doe" to the court on or before **April 20, 2014**; if he chooses to file an amended complaint, as authorized below, then he shall include Doe's correct name and location in the amended complaint; if he does not file an amended complaint, then he shall submit Doe's correct name and location in a notice to the court. Plaintiff's failure to comply with this paragraph will result in the dismissal of his claims against John Doe without prejudice to filing them in a new case after he learns Doe's correct name..

On or before **April 20, 2014,** plaintiff may file an amended complaint <u>in which he names John Doe and provides his location and/or cures the deficiencies in the claims against defendant Grounds</u>. The amended complaint must include the caption used in this order and the civil case number C 13-1229 WHA (PR) and the words FIRST AMENDED COMPLAINT on the first page. Because an amended complaint completely replaces the original complaint, plaintiff must include in it all the claims he wishes to present. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). He may not incorporate material from the original complaint by reference. <u>Failure to amend within the designated time and in accordance with this order will result in the dismissal the claims against Grounds.</u>

**IT IS SO ORDERED.**
Dated: February ___19___, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

16